UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK JOHNSTON,

               Plaintiff,

v.

CENTURYLINK, INC.,

               Defendant.

CASE NO. C11-5588 BHS

ORDER GRANTING SUMMARY JUDGMENT

This matter comes before the Court on Defendant Centurylink, Inc.'s ("Centurylink") motion for summary judgment (Dkt. 23). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On September 5, 2012, Centurylink filed a motion for summary judgment. Dkt. 18. On September 26, 2012, Plaintiff Mark Johnston ("Johnston") filed a response in opposition to Centurylink's motion. Dkt. 23. On October 3, 2012, Centrurylink filed a reply. Dkt. 28.

## II. FACTUAL BACKGROUND

This case arises out of alleged age-based employment discrimination, under both state and federal law. Johnston is over forty years of age, and he worked for Centrylink as a business sales manager from March of 2001 until March of 2011, when he was terminated. Dkts. 23 at 9; 24; 24-1; 24-2.

During February and March of 2011, Lisa Hart ("Hart"), a lead human resource business partner for Centurylink, investigated alleged complaints against Johnston that he was abusive towards subordinates. Dkt. 19 & 19-1. In her declaration, Ms. Hart says that on February 16, 2011, she received a phone call from Matt Voss ("Voss") complaining of Johnston's abusive conduct toward him. Dkt. 19 at 2. Voss was a business sales consultant at Centurylink and reported to Johnston. *Id.* Hart summarized her initial employee interviews, including nine people who worked under or near Johnston, in a written report to Johnston's direct supervisors Richard Twilling ("Twilling") and Jeff Painting ("Painting") and to lead human resources business partner Danette Norris. Dkt. 19 at 2-3. Due to the seriousness of the allegations regarding Johnston's abusive and intimidating behavior to subordinate employees, two other human resource professionals interviewed five more employees. *Id.* at 3.

On February 28, 2011, Hart (by phone) and Twilling met with Johnston to inform him of the allegations. Dkt. 18 at 11 (*citing* Dkt. 19 at 2). After the meeting and additional interviews, Hart completed the report and concluded in part:

> Johnston denied conduct that was confirmed by 12 other persons. Thus, he is either misrepresenting the facts or completely unaware of his own conduct and how inappropriate it is. In either event, this causes concern

about the likelihood of recurring behavior given indications of denial or lack of awareness.

Dkt. 18 at 12. In her summary findings, Hart reported that Johnston's "historical pattern of verbal attacks has created an abusive work environment." Dkt. 19 at 3-4 (*citing* Dkt. 19-1 at 73-74). Although Johnston disputes this, according to Hart, after the report was circulated to management, human resources and legal, there was unanimous consensus that Johnston's employment should be terminated. Dkt. 18 at 12 (*citing* Dkt. 19 at 4).

In January 2011, prior to Johnston's termination, he expressed interest to Painting in a promotional position. Dkt. 24-3 at 4. The position for Area Vice President (Area VP) was filled on April 1, 2011. Dkt. 19 at 4. Johnston was not offered the position.

### III. DISCUSSION

Johnston contends that he was terminated and denied a promotion based on his age. He asserts that he has established a prima facie case of age-based discrimination. Additionally, he contends that the reasons for termination and failure to promote were pretextual, and genuine issues of material fact preclude summary judgment. First, Johnston argues that Centurylink's rationale, that he was terminated based on verbal abuse of his subordinates, is supported by inadmissible hearsay and there are disputed issues of fact regarding who made the recommendation to discipline him. Second, he contends the company's other basis for termination, that he loaned funds to a subordinate in violation of policy, is unworthy of belief because another employee had done the same without reprisal and because of allegedly conflicting information regarding who recommended discipline.

ORDER - 3

Centurylink argues that it did not discriminate against Johnston based on his age when it terminated him and failed to promote him.  Rather, the company argues Johnston was terminated for legitimate non-discriminatory reasons, namely that he committed substantiated misconduct.  Similarly, Centurylink contends Johnston's age was not a factor in its decision whether to promote him because, assuming he was otherwise qualified, the decision to fill the Area VP position took place after Johnston was terminated.  Centurylink asserts they are entitled to summary judgment on two bases: (1) Johnston cannot make out a prima facie case for age discrimination, and (2) even if he could, Johnston could not meet his burden to show Centurylink's reasons for terminating or failing to promote him were pretextual.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Age Discrimination**

To establish an age discrimination claim under state or federal law, a plaintiff must prove that the employer intentionally discriminated against him based on his age. *Grimwood v. University of Puget Sound*, 110 Wn.2d 355, 363-64 (1988);[1] *St. Mary's*

---

[1] *Grimwood* notes that the Washington State statute on age discriminate, RCW 49.60.180, does not provide any criteria for establishing an age discrimination case. 110 Wn.2d at 351-62. Thus, state courts look to federal cases construing the Age Discrimination in Employment Act of

1  *Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  Plaintiff's age discrimination claim is

2  subject to the three-part, burden-shifting analysis set forth in *McDonnell Douglas Corp.*

3  *v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450

4  U.S. 248, 253 (1981); *See also Grimwood*, 110 Wn.2d at 363-64.  This analysis requires

5  the plaintiff to establish a prima facie case of intentional discrimination.  *McDonnell-*

6  *Dougla*s, 411 U.S. at 802-03; *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.

7  1994); *Xieng v. People's Nat'l Bank*, 63 Wn. App. 572, 578 (1991), *aff'd*, 120 Wn.2d 512

8  (1993).  If a plaintiff can establish a prima facie case, the employer must then articulate a

9  legitimate, nondiscriminatory reason for the adverse employment action.  *See*

10 *McDonnell- Douglas*, 411 U.S. at 802-03; *Burdin*e, 450 U.S. at 253-54; *Wallis*, 26 F.3d at

11 889; *Grimwood*, 110 Wn.2d at 364.  When an employer articulates a legitimate,

12 nondiscriminatory reason, the presumption of unlawful discrimination created by the

13 prima facie case "simply drops out of the picture."  *St. Mary's Honor Ct*r., 509 U.S. at

14 511; *Wallis*, 26 F.3d at 889-90.  The plaintiff must then produce specific, substantial, and

15 admissible evidence establishing that disputed issues of material fact exist as to whether

16 the employer's explanation is a pretext for illegal discrimination and the real reason was

17 discriminatory.  *St. Mary's Honor Ctr.,* 509 U.S. at 507*; Kuyper v.Dep't of Wildlife*, 79

18 Wn. App. 732, 738-39, 904 P.2d 973 (1995).

---

22 1967 (ADEA), 29 U.S.C. § 621, *et seq.* (1976), for guidance, insofar as they are consistent with the purposes of RCW 49.60.180. *See id*. at 362.

### 1. Prima Facie Case

A plaintiff can establish a prima facie case by demonstratinghe or she: (1) was at least forty years old; (2) was performing her job satisfactorily; (3) was discharged; and (4) was "either replaced by [a] substantially younger [employee] with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). An inference of discrimination can be established by "showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed ... or by showing that others not in their protected class were treated more favorably." *Id*. (citation omitted).

Centurylink argues that Johnston's discrimination claim should be dismissed "at the prima facie stage because he cannot establish the third element of his prima facie case." Dkt. 18 at 15; *see also* Dkt. 19 and 19-1. Although Centurylink acknowledges that Johnston was performing his "sales function," it argues that he was not satisfactorily performing his role as a manager of a team of people. *Id*. According to the company, Hart's investigation, which contains statements that corroborated Mr. Voss's complaints that Johnston abused subordinates and other misconduct, establishes that Johnston was not performing his job satisfactorily. *Id*. Centurylink contends that "it is well established that a proven inability to get along well with others in one's job precludes an employee from establishing the "qualified" component of the prima facie case. *Id*. (*citing, e.g.*, *Fane v. Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007) (affirming no prima facie age discrimination claim where employee with abrasive and disrespectful attitude could not

have met employer's legitimate expectations*)*; *Shiflett v. GE Fanuc Automation Corp.*, 960 F. Supp. 1022, 1030 (W.D. Va. 1997), *aff'd*, 151 F.3d 1030 (4th Cir. 1998) (holding no prima facie age discrimination claim where "plaintiff was not performing at the level of its legitimate expectations—for employers can reasonably and legitimately expect that their employees will not repeatedly harass or intimidate their colleagues") (ADA). Based on the foregoing, Centurylink maintains that Johnston has not presented any evidence giving rise to age discrimination.

Johnston argues that he has met his burden of establishing a prima facie case. Dkt. 23 at 9. He asserts that he has demonstrated (1) he is sixty years old, (2) that he was performing his job in a satisfactory manner, (3) that he is substantially older than the person who was selected for the position to which he applied as well as the one who replaced him, and (4) that each of those actions constituted an adverse employment action giving rise to an inference of age discrimination. *Id*.

Under Ninth Circuit precedent, the Court finds Johnston has established a prima facie case of age discrimination. *See Shelley v. Geren,* 666 F.3d 599, 609 n. 4 (9th Cir. 2012 (in establishing a prima facie case, the plaintiff does not have to show that he was discriminated against in favor of a younger employee, as that is done in the pretext phase).

**2.     Pretext**

Because Johnston established his prima facie case, the burden then shifts to Centurylink to provide a non-discriminatory explanation for its hiring decisions. Centurylink did so here. Centurylink proffers as its non-discriminatory explanation that

1 Johnston was abusive to his subordinates and loaned money to a subordinate in violation
2 of company policy. Dkt. 18 at 17-19. This is a facially legitimate explanation.
3 Johnston therefore argues Centurylink's reasons for terminating and failing to
4 promote him were pretextual. He contends that Centurylink's assertion that it terminated
5 based on verbal abuse of his subordinates is supported by inadmissible hearsay within
6 Hart's investigation. Dkt. 23 at 10-12. In the course of Hart's investigation, she compiled
7 statements from employees, including Johnston's subordinates, which contain
8 information that Johnston was verbally abusive to other employees. Dkt. 19 and 19-1.
9 Hart's report and the employees' statements are not hearsay, as they are not
10 offered within Centurylink's motion to prove the truth of the matter asserted. *See* Fed. R.
11 Evid. 801(c). Rather, they are offered to show that Centurylink did not have an unlawful
12 motive for discharging Johnston. Dkt. 28 at 5. The report and statements are not
13 hearsay.[2] *See* Fed. R. Evid. 803(3). It is well settled that evidence offered by an
14 employer to show its lawful motivation for discharging an employee is not hearsay
15 because it is not offered for truth of the matter asserted. *See, e.g., Henein v. Saudi*
16 *Arabian Parsons Ltd.*, 818 F.2d 1508, 1512 (9th Cir. 1987) (out of court statements
17 describing employee's use of illegal drugs not hearsay when offered to show employer's

---

19 [2] As Centurylink argues, even if Hart's report and the employee statements were hearsay, under the 2010 amendments to the federal rules that is not grounds for ignoring the evidence on
20 summary judgment. Dkt. 28 at 6. If the evidence can be "presented in a form that would be admissible in evidence" it may be considered on summary judgment. Fed. R. Civ. P. 56(c)(2).
21 Here, all the employees who provided statements to Hart are available to testify at trial. Dkt. 29 at 2. Several of these employees have, indeed, been deposed and have testified under oath to Johnston's mistreatment. *Id.* & 29-1-3.
22

ORDER - 9

reason for employee's termination); *Rice v. Offshore Sys., Inc.*, 167 Wn. App. 77, 87 (2012) (incident reports describing vessel fire and former employee's conduct that were prepared by police were not hearsay in age discrimination suit where "they were offered to show Davis's motivation for the decision to terminate Rice's employment").

Johnston also maintains that there are disputed issues of fact regarding who made the recommendation to discipline him and these inconsistencies give rise to an inference of age-based discrimination sufficient to create a genuine issue of material fact. Dkt. 23 at 11-12. Johnston argues:

> It is critical to note that Jeff Painting, the President of the Business unit, testified that he relied upon the recommendation of the Plaintiff's manager, Richard Twilley, for recommendation on the imposition of discipline. Mr. Twilley, when subject to deposition, denied making any recommendation. Indeed, he denied knowledge of the termination letter which was issued over his name. …. While Mr. Painting also indicated that the decision to dismiss the Plaintiff was a consensus decision, Plaintiff contends that the lack of evidence upon which Mr. Painting relied constitutes a fatal basis for disciplinary action. It also provides a factual dispute on a material issue upon which the effort of the Defendant to satisfy its burden of production is based.

*Id.* (footnotes omitted).

Even if the above inconsistencies are true, Johnston has still failed to show any "specific" and "substantial" circumstantial[3] evidence of intentional age discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998); *see also St. Mary's Honor Ctr.*, 509 U.S. at 507. Although Johnston believes that his age was the reason for,

---

[3] For example, Johnston fails to point to any remarks by his employer about his age, other employees' ages, or other evidence from which the Court could infer that Centurylink had an age-related bias.

1  or a motivating factor in his discharge and that he was performing satisfactory work, his
2  subjective speculation or conclusory opinions are not enough to establish pretext. *See*
3  *Grimwood,* 110 Wn.2d at 365 and 360 (employee's perception of himself is not relevant;
4  it is the perception of the decision-maker which is relevant).

5        Johnston also contends the company's other basis for termination, that he loaned
6  funds to a subordinate[4] in violation of policy, is unworthy of belief because another
7  employee had done the same without reprisal and because of allegedly conflicting
8  information regarding who recommended discipline. Dkt. 23 at 12. Centurylink
9  responds that there is no evidence in the record that Maureen Voss ("Ms. Voss") loaned
10 money to Kathy Sallade ("Sallade"), but that even if Ms. Voss had loaned money to her,
11 Sallade did not directly report to Ms. Voss. Dkt. 28 at 4-5. Therefore, the circumstances
12 are not comparable, as a loan from a supervisor creates an obvious conflict of interest
13 because that person has the ability to make or influence termination decisions. *Id*.

14       Upon review of the above arguments and the record, the Court finds that
15 Centurylink's other basis for termination, that Johnston loaned a subordinate funds, is not
16 unworthy of belief. There is no evidence in the record that Ms. Voss actually loaned
17 Sallade money, and, if she had loaned her money and Ms. Voss's superiors knew of it,
18 whether she would have been disciplined. No specific and substantial evidence shows
19 that this basis for Centurylink's decision to terminate Johnston was unworthy of belief
20 such that it gives rise to the inference of age-based discrimination.

---

[4] It is undisputed that Johnston loaned money to Sallade, who directly reported to him.

In fact, the Court finds the record devoid of any evidence that either bases for termination was motivated by age discrimination. No genuine issue of material fact exists from which age-based discrimination could be reasonably inferred.

Turning to Johnston's failure to promote claim, it is undisputed that Johnston was terminated before Centurylink promoted another person to the position for which Johnston had applied.  Even if Centurylink had intentionally delayed its decision regarding who to promote, as Johnston alleges, there is no evidence in the record that Johnston was actually qualified for that particular job.  Dkt. 23 at 6-7.  In fact, the Court has found that no genuine issue of material fact exists as to whether Centurylink's proffered reasons for termination were unworthy of belief, and Century asserts Johnston's misconduct would have disqualified him from further consideration for a promotion (Dkts. 18 at 19; 19 at 4), had he not been terminated and otherwise qualified for the promotion.[5]  Johnston does not offer either specific or substantial evidence showing that Centurylink's decision not to provide him an opportunity for the promotion or the promotion itself was unworthy of belief such that it gives rise to a genuine issue of material fact as to whether the company's promotional decision was age-related.  As the Court found with regard to Johnston's termination complaints, so it finds with his failure

---

[5] Centurylink maintains Johnston was not otherwise qualified for the promotional position because he was an average sales manager with a small market and revenues of $20-30 million, and he supervised only 10-12 people. Dkt. 20-1 at 46-48. The promotional position, Area Vice President (Area VP), supervises over one hundred people and would be responsible for $400 million in revenue. *Id*. To appoint Johnston Area VP, would have been an unusual progression because he did not have interim steps towards managing larger teams and markets. *Id*. Even if a younger person was placed in the Area VP position, as Johnston contends, Johnston has not met his burden of showing Centurylink's reasoning is unworthy of belief such that it gives rise to an inference of age discrimination.

1 to promote allegations: the record is devoid of any evidence that Centurylink's failure to
2 promote Johnston was motivated by his age.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Centurylink's motion for summary judgment (Dkt. 18) is **GRANTED**.

Dated this 26th day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 13